IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RUSSELL ARNOLD,
    Plaintiff,

v.                                                                  Civil Action No. 3:24cv340

UNITED PARCEL SERVICE SUPPLY
CHAIN SOLUTIONS, INC., et al.,
    Defendants.

## OPINION

In January 2021, Russell Arnold ("Arnold"), an African American man who worked for United Parcel Supply Chain Solutions, Inc. ("UPS"), participated in a mandatory workplace training. During the training, the presenter showed several racially offensive images to the participants. Over the following weeks, Arnold complained about the images several times to UPS, both formally and informally. In March 2021, UPS terminated Arnold.

Arnold has sued UPS and three of its employees, Roger Huenke ("Huenke"), Laura Brown ("Brown"), and Ashley Osborn ("Osborn"), collectively ("the defendants"), under Title VII of the Civil Rights Act of 1964 ("Title VII"), alleging that they created a hostile work environment, retaliated against him, and wrongfully terminated him. The defendants moved to dismiss the Amended Complaint in its entirety for failure to state a claim. Because Arnold cannot sue the individual defendants under Title VII and he has failed to plead a cognizable Title VII claim against UPS, the Court will grant the motion to dismiss but will grant Arnold leave to amend his wrongful termination claim.

1

## I. FACTS ALLEGED IN THE AMENDED COMPLAINT[1]

Arnold worked for UPS, a "national corporation employing thousands of workers," from October 30, 2015, through March 29, 2021. (ECF No. 4, at 4 ¶ 21.) On January 18, 2021, UPS required Arnold and other employees to participate in a mandatory training. (*Id.* at 2 ¶ 2.) The presenter led employees in an activity where she showed participants several images and asked the employees how they would respond if they saw similar images displayed in the workplace. (ECF No. 12-1, at 2.) The images included pictures that would be offensive to various people groups, "including a Swastika, a hooded Klan person, [] a cartoon figure of a Hispanic person in a stereotypical outfit with racist commentary beneath," and a noose. (*Id.* at 2 n.1.) In response to seeing these images, Arnold, an African American man, "was shocked, appalled, and disturbed," and "immediately objected to the racially offensive images." (ECF No. 4, at 3 ¶¶ 4–5.)

Arnold reported the training incident to his supervisor, Huenke, that same day. (*Id.* at ¶ 6.) Huenke told Arnold to file a complaint with Human Resources ("HR"), and additionally suggested that Arnold take vacation leave until they resolved the matter. (*Id.* ¶¶ 6–7.) Arnold started a "vacation leave of absence" on January 19, 2021, the day after the training.[2] (*Id.* at ¶ 8.)

---

[1] In evaluating the defendants' motion to dismiss, the Court relies on the facts from Arnold's Amended Complaint, (ECF No. 4), and the defendants' exhibits attached to their Brief in Support of the Motion to Dismiss, (ECF Nos. 12-1, 12-2, 12-3). The Court is "generally limited to a review of the allegations of the complaint itself" when considering a motion to dismiss. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). But the Court can "also consider documents that are explicitly incorporated into the complaint by reference . . . [and] document[s] submitted by the movant that [were] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint." *Id.* Here, the defendants attached Arnold's EEOC complaint and two letters that UPS sent to Arnold regarding his absence from work as exhibits to their Brief in Support. Arnold refers to all of these in his Amended Complaint, and all are integral to his allegations. The Court, therefore, will consider the letters and the EEOC complaint in addition to Arnold's factual allegations.

[2] The exact details of Arnold's leave of absence are unclear. In his Amended Complaint, Arnold refers to two letters he received from UPS, one on February 15, 2021, and one on March

2

On January 21, 2021, Arnold filed a formal HR complaint against UPS regarding the mandatory training, saying that UPS had "breached its 'Zero Tolerance Policy,' that protects all employees from racially offensive images in their place of employment." (*Id.* ¶ 9.) A few days later, on January 26, 2021, he spoke with Brown, UPS's talent director and the person responsible for the team who created the training's content. (*Id.* ¶ 11.) Brown said that they used the images for "training purposes" and indicated that they would "continue to use the same images in upcoming mandatory training sessions and beyond." (*Id.* ¶ 12.) Due to the "intimidating nature" of his call with Brown, Arnold filed a complaint with UPS's Ethics Hotline regarding Brown's "awkward and insensitive" response to the situation. (*Id.* ¶ 13.) The next day, on January 27, 2021, Arnold spoke with Osborn, an HR investigator, over the phone about his two HR complaints.

---

25, 2021. (ECF No. 4, at 3–4.) UPS provided a copy of the letters, and Arnold has not objected to the letters' authenticity. Relevant here, although Arnold's Amended Complaint does not specify the approved length of his leave of absence and suggests that he believed his leave extended indefinitely, (*see id.* at 4), the February 15 letter indicates that Huenke approved Arnold's vacation leave from January 25, 2021, through February 5, 2021, (*see* ECF 12-2, at 1.) The March 25 letter Huenke indicated that Arnold had been on unauthorized leave since February 1, 2021. (*See* ECF No. 12-3, at 1.)

When a conflict arises between a document incorporated by reference into the complaint and the factual allegations of the complaint itself, a court will credit the document over the allegations when (a) "the plaintiff has adopted the contents of the document," or (b) the plaintiff "attaches or incorporates a document upon which his claim is based." *Goines*, 822 F.3d at 167. But "if a plaintiff attaches or references a report prepared by a third-party to show how he learned of certain facts alleged in his complaint, he does not automatically adopt all of the factual conclusions contained in the report." *Id.* Here, Arnold referred to the letters UPS sent him but did not attach copies of the letters to his Amended Complaint. And the UPS letters and Arnold's factual allegations in his Amended Complaint conflict: the letters indicate that Arnold's vacation time expired after a set date, while Arnold's allegations suggest that his leave of absence extended indefinitely. Because Arnold does not refer to the letters from UPS in his Amended Complaint to "adopt all of the factual conclusions contained" therein, but rather to "show how he learned of certain facts alleged" in his Amended Complaint, *id.*, the Court will assume for the purposes of this motion that his approved leave beginning January 19, 2021, did not have a specific end date.

3

(*Id.* ¶ 14.) Osborn indicated that she would investigate the matters and present her findings to "the appropriate parties," who would then resolve the complaints. (*Id.*)

Arnold remained on vacation leave during the pendency of the investigation. On February 15, 2021, Arnold received a letter from UPS, which indicated that UPS "determined that [Arnold's] two complaints were unfounded" and that "no further investigation of the matter was warranted," but did not give any explanation "as to how the decision was determined." (*Id.* at 3–4 ¶ 15.) Arnold remained on leave after he received the letter. In mid-March, Huenke emailed Arnold's clients to tell them that Arnold no longer worked for UPS. (*Id.* at 4 ¶ 17.) The following week, on March 25, 2021, Arnold received a second letter from UPS, which "labeled [Arnold's] authorized and approved vacation leave of absence as 'abandonment' of his position at UPS" and "informed [Arnold] that he would be terminated from his employment, effective March 29, 2021, if he did not return to work." (*Id.* ¶ 16.) When Arnold did not return to work on March 29, 2021, UPS terminated his employment. (*Id.* at 5 ¶ 31.)

On October 19, 2021, Arnold filed a charge of discrimination with the Virginia Office of Civil Rights and the Equal Employment Opportunity Commission (the "EEOC"). (*Id.* at 4 ¶ 19.) Arnold filed a case in this Court on May 14, 2024. The Amended Complaint—the operative complaint in this case—asserts three Title VII violations against the defendants: (1) that both UPS and the individual defendants subjected him to a hostile work environment (Count 1); (2) that UPS wrongfully terminated him (Count 2); and (3) that UPS retaliated against him (Count 3).[3] Arnold

---

[3] Although not entirely clear, the Court construes Counts 2 and 3 as against UPS only. But even if Arnold asserted those claims against the individual defendants, they would nevertheless fail because, as explained below, Title VII does not allow a plaintiff to sue employees individually. Further, to the extent Arnold sues the individual defendants in their official capacities, other courts in this circuit have found that, in the Title VII context, suing an individual in their official capacity amounts to suing the employer itself. *See Gordon v. Maryland State Police*, 2023 WL 6161089 at *6 (D. Md. 2023) (applying the analysis to state officials) (citing *Will v. Michigan Dept. of State*

4

seeks a declaratory judgment; asks that UPS reinstate him in his former position, or in the alternative, for an award of $2,000,000 in "front pay," $500,000 in back pay, $1,000,000 in compensatory damages; and requests a permanent injunction requiring UPS to refrain from "engaging in any further discriminatory or retaliatory conduct against" Arnold, to"[i]mplement comprehensive anti-discrimination and anti-retaliation policies," and to "provide regular training to all employees on these policies." (*Id.* at 6.)

## II. STANDARD OF REVIEW

The defendant moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In deciding the sufficiency of the claim, the Court does not consider disputes involving the facts or merits of the claim. *See Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When considering the motion, the Court must accept all allegations in the complaint as true and must draw all reasonable inferences in the plaintiff's favor. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, a "document filed *pro se* is 'to be liberally construed'" and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Regarding Title VII cases specifically, a plaintiff "is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss." *Templeton v. First Tennessee*

---

*Police*, 491 U.S. 58, 71 (1989)). In other words, even if the Court considers the claims against the individual defendants in their official capacities, Arnold's claims would fail as explained below for the same reasons his claims against UPS fail.

5

*Bank, N.A.*, 424 F. App'x 249, 250 (4th Cir. 2011) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002)) (explaining that, in Title VII retaliation cases, plaintiffs do not need to prove a *prima facie* case in order to defeat the motion to dismiss for failure to state a claim). But the Supreme Court in *Swierkiewicz* "left untouched 'the burden of a plaintiff to allege facts sufficient to state all the *elements* of [his] claim.'" *Jordan v. Alternative Resources Corp.*, 458 F.3d 322, 346 (4th Cir. 2006) (alteration in the original) (quoting *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003)), *overruled on other grounds by Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264 (4th Cir. 2015).

### III. ANALYSIS

#### A. Claims Against Huenke, Brown, and Osborn

As an initial matter, the Court must dismiss Arnold's claims against Huenke, Brown, and Osborn. Title VII provides that "it shall be an unlawful employment practice for an *employer* . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his . . . employment[] because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). Although a plaintiff can sue their employer under Title VII, "individuals are not liable under [Title VII]." *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180–81 (4th Cir. 1998). Further, "supervisors are not liable in their individual capacities for Title VII violations." *Id.* In other words, an employee asserting a discrimination claim under Title VII "must make [his] claim against [his employer] and not against the supervisor" who he claims discriminated against him. *Jones v. Tyson Foods, Inc.*, 378 F. Supp. 2d 705, 708 (E.D. Va. 2004), *aff'd sub nom. Jones v. Tyson Foods*, 126 F. App'x 106 (4th Cir. 2005).

Arnold has raised Title VII claims against Huenke, Brown, and Osborn—his supervisor and other individual employees of UPS. Because they are not subject to suit under Title VII, the Court will grant the motion to dismiss with prejudice as to these three defendants.

### *B. Hostile Work Environment Claim Against UPS (Count 1)*

With respect to UPS, Arnold first alleges that it violated Title VII by creating a hostile work environment. To allege a hostile work environment claim based on racial discrimination, a plaintiff must plead facts showing "(1) unwelcome conduct; (2) that is based on the plaintiff's [race]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Nixon v. Kysela Pere et Fils, Ltd.*, No. 22-1406, 2024 WL 3666166, at *4 (4th Cir. 2024) (quoting *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011)). To establish discrimination based on his race, Arnold asserts that UPS: (1) "authorized the use and display of racially offensive images in the workplace that were demeaning to [Arnold's] characteristic;" (2) "failed to address or remedy the hostile conduct despite [Arnold's] complaint to management;" (3) engaged in conduct "so severe and pervasive that it created an abusive work environment;" and (4) that UPS's actions "were motivated by [Arnold's] . . . race, and were unwelcome by [Arnold]." (ECF No. 4, at 4 ¶¶ 23–26.)

At a minimum, Count 1 fails because Arnold does not allege facts that demonstrate that the training images "[were] sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment." *Nixon*, 2024 WL 3666166, at *4. At this prong, the Court considers "the totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work

7

performance.'" *Okoli*, 648 F.3d at 220 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)).

Here, Arnold only asserts that UPS showed racially insensitive images during an anti-discrimination training, and that it failed to remedy the issue once Arnold complained. While Arnold mentions the "trauma and fear suffered by African Americans due to the history of slavery in the U.S.[] and the terroristic symbolism of the noose," (ECF No. 4, at 3 ¶ 11), he fails to show that the images from the training amounted to more than a one-time "mere offensive utterance," *Okoli*, 648 F.3d at 220. Moreover, his allegations that UPS granted him vacation leave while it investigated the issue further undercuts his ability to meet this prong. Arnold, therefore, fails to plausibly plead a hostile work environment claim.

### C. *Wrongful Termination Claim Against UPS*

Arnold next alleges that UPS wrongfully terminated him because "[he] is an African American who objected to a display of racially offensive images in his work environment." (ECF No. 4, at 5 ¶ 33.) To plausibly plead a wrongful termination claim under Title VII, a plaintiff must allege that:

(1) [he] is a member of a protected class;

(2) [he] suffered an adverse employment action;

(3) [he] was performing [his] job duties at a level that met [his] employer's legitimate expectations at the time of the adverse employment action; and

(4) the position remained open or was filled by similarly qualified applicants outside the protected class."

*Scott v. Health Net Fed. Servs., LLC*, 463 F. App'x 206, 208 (4th Cir. 2012).

Arnold has plausibly alleged that he is a member of a protected class as an African American man who suffered an adverse employment action when UPS terminated him, and thus

8

satisfies the first two elements of a wrongful termination claim. Although Arnold does not clearly assert whether Huenke granted him indefinite leave, at this stage, the Court will take as true that he obtained "authorized and approved vacation leave" for the February and March 2021 time period at issue here. (ECF No. 4, at 4 ¶ 16.)

But Arnold's wrongful termination claim fails because he does not allege any facts to establish whether his position remained open or if UPS filled the position with a "similarly qualified applicant[]" who was not African American. *See Scott*, 463 F. App'x at 208. Because Arnold has not sufficiently pleaded all elements of a wrongful termination claim, the Court will dismiss Arnold's wrongful termination claim without prejudice. But because his complaint lacks any allegations about this element, and considering Arnold's *pro se* status, the Court will nevertheless grant Arnold one last opportunity to amend his complaint against UPS as to this claim only.

### D. Retaliation Claim Against UPS

Finally, Arnold alleges that UPS retaliated against him for complaining about the images by firing him. To plausibly plead a Title VII retaliation claim, a plaintiff must show (1) that he "engaged in a protected activity;" (2) that the employer "took an adverse employment action" against him; and (3) that "there was a causal link between the two events." *Boyer-Liberto*, 786 F.3d at 281 (internal citations omitted).

Employees engage in a protected activity when they make a "complaint of discrimination based upon race, color, religion, sex or national origin." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021) (internal citation omitted); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 347 (2013) (indicating that an employee's "submission of or support for a complaint that alleges employment discrimination" is a type of protected employee conduct).

9

Additionally, an employee engages in a protected activity "when [he] opposes 'not only. . . employment actions actually unlawful under Title VII but also employment actions [he] reasonably believes to be unlawful.'" *Boyer-Liberto*, 786 F.3d at 282 (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005)). The plaintiff must have an "objectively reasonable" belief that the employment action is unlawful. *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 327 (4th Cir. 2018).

Here, Arnold has alleged that he reported his complaints about racial harassment and discrimination several times. But, even as alleged, Arnold fails to show that UPS's decision to require employees to take an anti-harassment and discrimination training that used the racially charged images for training purposes was "actually unlawful" under Title VII, nor was it "objectively reasonable" for Arnold to believe that showing those images was unlawful. *Boyer-Liberto*, 786 F.3d at 282. Arnold's retaliation claim, therefore, fails, and the Court will dismiss that claim with prejudice.

## IV. CONCLUSION

Because Arnold cannot sue individuals under Title VII, the Court will grant the defendants' motion to dismiss with prejudice against Huenke, Brown, and Osborn. (ECF No. 11.) And, because he has failed to plausibly plead a hostile work environment, wrongful termination, or retaliation claim against UPS, the Court will also grant the motion to dismiss as to those claims. Although the Court will dismiss the hostile work environment and retaliation claims with prejudice, it will nevertheless dismiss the wrongful termination claim without prejudice and will grant Arnold one last opportunity to amend that claim as to UPS only.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record and to Arnold, the *pro se* plaintiff.

Date: 24 October 2024
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge