IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RUSSELL ARNOLD,
        Plaintiff,

v.                                                  Civil Action No. 3:24cv340

UNITED PARCEL SERVICE SUPPLY
CHAIN SOLUTIONS, INC.,
        Defendant.

## OPINION

In January 2021, Russell Arnold ("Arnold"), an African American man who worked for United Parcel Supply Chain Solutions, Inc. ("UPS"), participated in a mandatory workplace training. During the training, the presenter showed several racially offensive images to the participants. Over the following weeks, Arnold complained about the images several times to UPS, both formally and informally. In March 2021, UPS terminated Arnold.

UPS moves to dismiss the second amended complaint for failure to state a claim. Because Arnold only alleges wrongful termination through conclusory allegations and fails to assert any plausible facts to support a Title VII wrongful termination claim, the Court will dismiss Arnold's second amended complaint and close the case.

### I. FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT

Arnold worked for UPS from October 30, 2015, through March 29, 2021. On January 18, 2021, UPS required Arnold and other employees to participate in a mandatory training. During the presentation, UPS showed the participants "several racially offensive images . . . including a noose." (ECF No. 25, at 2 ¶ 3.) In response to seeing these images, Arnold, an African American man, "was shocked, appalled, and disturbed," and "immediately objected to the racially offensive images." (*Id.* ¶¶ 4–5.)

1

Arnold reported the training incident to his supervisor that same day. The supervisor told Arnold to file a complaint with Human Resources ("HR"), and additionally suggested that Arnold take vacation leave until they resolved the matter. Arnold started a "vacation leave of absence" on January 19, 2021, the day after the training. (*Id.* at 3 ¶ 8.) On January 21, 2021, Arnold filed a formal HR complaint against UPS regarding the mandatory training, saying that UPS had "breached its 'Zero Tolerance Policy,' that protects all employees from racially offensive images in their place of employment." (*Id.* ¶ 9.) A few days later, on January 26, 2021, he spoke with UPS's talent director and the person responsible for the team who created the training's content. The talent director told Arnold that they used the images for "training purposes" and indicated that they would "continue to use the same images in upcoming mandatory training sessions and beyond." (*Id.* ¶ 12.) Due to the "intimidating nature" of his call with the talent director, Arnold filed a complaint with UPS's Ethics Hotline regarding UPS's "awkward and insensitive" response to the situation. (*Id.* ¶ 13.) The next day, on January 27, 2021, Arnold spoke with an HR investigator over the phone about his two HR complaints. The investigator indicated that she would look into the matters and present her findings to UPS, who would then resolve the complaints.

Arnold remained on vacation leave during the pendency of the investigation. On February 15, 2021, Arnold received a letter from UPS, which indicated that UPS "determined that [Arnold's] two complaints were unfounded" and that "no further investigation of the matter was warranted," but did not give any explanation "as to how its decision was determined." (*Id.* at 3–4 ¶ 15.) Arnold remained on leave after he received the February 15 letter. In mid-March, UPS informed Arnold's clients that Arnold no longer worked for UPS. The following week, on March 25, 2021, Arnold received a second letter from UPS, which "characterized [Arnold's] authorized and approved

vacation leave of absence as 'abandonment' of his position at UPS" and "informed [Arnold] that he would be terminated from his employment, effective March 29, 2021, if he did not return to work." (*Id.* ¶ 16.) When Arnold did not return to work on March 29, 2021, UPS terminated his employment.

On October 19, 2021, Arnold filed a charge of discrimination with the Virginia Office of Civil Rights. Arnold filed a case in this Court on May 14, 2024. After dismissing Arnold's amended complaint, the Court gave Arnold leave to amend his wrongful termination claim against UPS only. Arnold then filed his second amended complaint, alleging wrongful termination under Title VII against UPS. UPS moves to dismiss the second amended complaint for failure to state a claim.

## II. STANDARD OF REVIEW

The defendant moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility if the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

3

alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545.

## III. ANALYSIS

### A. Administrative Exhaustion

UPS argues that Arnold did not administratively exhaust his wrongful termination claim, so the Court may not consider it. "It is well settled that before filing suit under Title VII[,] . . . a plaintiff must exhaust [his] administrative remedies by bringing a charge with the EEOC." *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022). Typically, "a plaintiff fails to exhaust his administrative remedies where . . . his administrative charges [refer to] different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Sydnor v. Fairfax County*, 681 F.3d 591, 593 (4th Cir. 2012) (omission in original) (quoting *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005)). This results in a procedural bar "when the claims in [a plaintiff's] court complaint are broader than 'the allegation of a discrete act or acts in [the] administrative charge.'" *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 306 (4th Cir. 2019) (second alteration in original) (quoting *Chacko*, 429 F.3d at 508–10).[1] The framework provides some flexibility, however, for "hapless plaintiffs" who might otherwise fall victim to "overly technical concerns." *Sydnor*, 681 F.3d at 594. Thus, "those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII [] lawsuit." *Walton*, 33 F.4th at 172 (internal citation omitted) (alteration in the original).

---

[1] *See also Fort Bend County v. Davis*, 139 S. Ct. 1843, 1846 (2019) (holding that Title VII's administrative exhaustion requirement does not constitute a jurisdictional requirement).

4

Arnold's allegations in his EEOC complaint allege racial discrimination and retaliation stemming from the same events described above. (*See* ECF No. 12-1.) While he did not use the phrase "wrongful termination" in the EEOC complaint, a wrongful termination claim reasonably relates to his allegations in the EEOC complaint, which mirror the allegations in his second amended complaint. *See Walton*, 33 F.4th at 172. Arnold, therefore, exhausted his administrative remedies for his wrongful termination claim.

### B. Wrongful Termination Claim

Arnold alleges that UPS wrongfully terminated him because "[he] is an African American who objected to a display of racially offensive images in his work environment and complained about it." (ECF No. 25, at 4 ¶ 24.) To plausibly plead a wrongful termination claim under Title VII, a plaintiff must allege that:

(1) [he] is a member of a protected class;

(2) [he] suffered an adverse employment action;

(3) [he] was performing [his] job duties at a level that met [his] employer's legitimate expectations at the time of the adverse employment action; and

(4) the position remained open or was filled by similarly qualified applicants outside the protected class."

*Scott v. Health Net Fed. Servs., LLC*, 463 F. App'x 206, 208 (4th Cir. 2012).

At a minimum, Arnold's wrongful termination claim fails because he simply recites the fourth element of a wrongful termination claim, stating that "[f]ollowing [his] termination, [UPS] either left the position of Account Executive vacant or filled the position with a similarly qualified individual who was not a member of [Arnold's] protected class." (ECF No. 25, at 5 ¶ 25.) But Arnold fails to allege any specific facts or details about what happened with the position after UPS

5

fired him. Because Arnold has not sufficiently pleaded all elements of a wrongful termination claim, the Court will dismiss Arnold's wrongful termination claim with prejudice.

## IV. CONCLUSION

Because Arnold failed to include non-conclusory facts in his second amended complaint sufficient to plausibly plead a wrongful termination claim against UPS, the Court will grant the motion to dismiss with prejudice.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record and to Arnold, the *pro se* plaintiff.

Date: 23 January 2025
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge